# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>HTC CORPORATION, ET AL.<br><br>　　　Defendants. | CIVIL ACTION NO. 6:13-cv-507<br><br>**CONSOLIDATED LEAD CASE** |

# PLAINTIFF'S REPLY BRIEF
# ON CLAIM CONSTRUCTION

I.  **U.S. Patent No. 6,819,923**

   A.  **"means for receiving a neighbor cell information message" (cl. 11)**

Claim 11 recites a "mobile communication means" that includes "means for receiving a neighbor cell information message." Figure 7 depicts a "mobile communication means" that includes a receiver (comprising components 452-462), antenna 498, and control block 490 (comprising a microprocessor). *See* Ex. B at Fig. 7; 6:17-62. It is self-evident to one skilled in the art that this antenna, receiver, and microprocessor depicted in that figure together "receiv[e] a neighbor cell information message." Ex. A at ¶¶ 72-77.

Defendants take indefensible positions to avoid this conclusion, arguing that the disclosed antenna is not associated "with any function at all" (ignoring its well-known inherent function), the receiver "has no disclosed involvement with the neighbor cell information message" (despite statements to the contrary at 2:4-7 and 7:2-9), and the microprocessor does not receive a "neighbor cell information message" (though it executes "programs" that do). To evade dictionary definitions of "receiver" that contradict their position, they fabricate a distinction between receiving "signals" and "messages" — despite the fact such messages are indisputably received *as* signals, and the self-evident knowledge that receivers perform "receiving" functions. *EnOcean GmbH v. Face Int'l Corp.*, 742 F.3d 955, 960-62 (Fed. Cir. 2014).

And, to escape the holding of *Katz*, Defendants wrongly assert that a receiving "a neighbor cell information message" is a special implementation of "receiving" that requires an algorithm — despite ample case law to the contrary. *In re Katz*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) (addressing, *inter alia*, "means for processing at least certain of said answer data signals relating to select ones of said individual callers" found in claim 96 of U.S. Pat. No. 5,684,863); *see also* Doc. No. 277 at 7. Their arguments are without merit.

B.     "means for associating a specific value of said set of specific parameter values indicated by one of said index with the corresponding second parameter of a neighbor cell" (cl. 11)

Defendants wrongly allege that the claim 11 is indefinite because the patent does not show "how" data within the message depicted in Figures 2-5 is "associated." Doc. No. 288 at 26. To the contrary, as discussed in CCE's Opening Brief, the claim language and specification both convey how the claimed association is performed. Additionally, the inventors illustrated how the index is used to associate message data in a figure submitted during prosecution (shown at right). Ex. C at 10. Notably, the box in the bottom right of this figure explains that "PARAMETER POINTER 257 points to a specific value for that parameter in the PARAMETER VALUE LIST 222," and lines were included to identify the relationship between data structures.



Thus, Defendants' attempt to liken CCE's proposed algorithm to a mere "input" falls flat. The intrinsic record specifies that the processor performs the claimed function by using a parameter specified by an index for a parameter of a neighbor cell. This algorithm constitutes specific structure to one skilled in the art, who would have knowledge of neighbor cell information messages in GSM systems. Ex. A at ¶¶ 16, 92. In light of this knowledge, the inventors were not required to provide source code-level detail about how to perform the claimed

function, and Defendants' demand for more is arbitrary and unwarranted. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011); *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003).

Further, Defendants' allegation that the disclosed algorithm renders limitations redundant reflects a misapprehension of the claim structure. The claimed apparatus receives a message that includes an index. It also uses the parameter value specified by the index for the second parameter, thereby "associating a specific value of said set of specific parameter values indicated by one of said index with the corresponding second parameter of a neighbor cell." What the index *is* and how it is *used* are not the same thing. CCE's construction respects that distinction.

Finally, Defendants baselessly attempt to exclude embodiments in which the index indicates the values of multiple parameters. Claim 11 recites "an index for a second parameter, said index indicating which value of said set of specific parameter values is used for said second parameter," and further requires "associating a specific value of said set of specific parameter values indicated by said index with the corresponding second parameter of a neighbor cell." As an open-ended claim, it does not foreclose embodiments in which the index indicates the value of *multiple* parameters and the device associates a plurality of specific values of said set of specific parameter values…with the corresponding second parameter of a plurality *of* neighbor cells. *See* Ex. B at 3:22-26; 5:35-45. CCE's proposal appropriately accounts for such embodiments.

## II. U.S. Patent No. 6,810,019

### A. "processing means for arranging gaps in a time-slot frame according to the measurement pattern definitions" (cl. 11)

The '019 patent makes clear that mobile devices arrange transmission gaps in a time-slot frame by receiving and applying TGL, TGD, TGPL, and/or TGPRC parameters, as shown in

Figures 3, 4, and 5.[1]  *See, e.g.*, Ex. D at 5:53-6:3; 6:1-3; 6:8-11; 6:31-32; 6:45-47; 7:39-; 7:62-8; *see also* Figure 5 *and* 7:31-8:40; Ex. A at ¶¶ 48-51.

Defendants' attacks on this disclosure are baseless. These parameters are not mere "inputs." As Defendants' own expert acknowledges, they inform a mobile device regarding the arrangement of transmission gaps in a time-slot. Doc. No. 288-1 at ¶ 34 ("The network informs the mobile device about the timing of compressed mode transmission by defining and transmitting a measurement pattern definition to the mobile device which provides the locations of gaps in a time-slot frame during which the mobile device can measure the signals from other cells."). Accordingly, they constitute specific structure to one skilled in the art, who would have knowledge of how parameters are used in UMTS devices. Ex. A at ¶ 52; *AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236, 1241-42 (Fed. Cir. 2007) (holding that reference to a known protocol sufficiently disclosed algorithm for corresponding structure). The inventors were not required to provide source code-level detail, and Defendants' demand for additional specificity improperly disregards the knowledge of one skilled in the art.

Nor does CCE rely on an expert to "derive" the requisite structure. Whether the patent adequately sets forth structure corresponding to the claimed functions ***must*** be considered from the perspective of one skilled in the art. *Intel Corp.*, 319 F.3d at 1365-66. This is not an instance where the specification is devoid of structure. Application of TGL, TGD, TGPL, and TGPRC parameters is tied to the claimed function, and one skilled in the art is equipped to implement the function based on that algorithm. Ex. A at ¶ 52; *Typhoon Touch*, 659 F.3d at 1385.

Defendants' final objections — that CCE's construction "introduces a new function" and "imports limitations…from a preferred embodiment" — simply fail to recognize that the

---

[1] For instance, the embodiment depicted in Figure 5 employs TGL, TGPL, and TGPRC parameters (but not TGD) to arrange gaps in a time-slot, while the embodiments discussed with reference to Figures 3 and 4 employ TGL, TGPL, TGD, and TGPRC. Accordingly, the disclosure indicates that the TGD parameter is optional.

structure corresponding to a claimed function is necessarily tied to the disclosure. In this instance, the disclosed structure is a processor configured to apply specific parameters, and the algorithm is the claimed structure — not a "new function."

### B. "the processing means are also arranged to set for the measurement pattern definition a delay according to the measurement pattern definitions" (cl. 11)

As a threshold matter, CCE agrees that the claimed function is "set[ting] for the measurement pattern definition a delay accounting to the measurement pattern definitions." The omission of the word "definition" in its Opening Brief was inadvertent.

By contrast, however, Defendants seek to rewrite the claimed function by substituting language from the specification for language in the claims. Their efforts are unfounded. "A court may not construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim." *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1331 (Fed. Cir. 2005). Moreover, the isolated statement from the specification on which Defendants' rely demonstrates neither express intent to redefine a term, nor clear and unmistakable disclaimer of claim scope. *See Colucci v. Callaway Golf Co.*, No. 6:08-cv-288, 2010 U.S. Dist. Lexis 4725 at *6-8 (E.D. Tex. Jan. 21, 2010). Accordingly, it cannot credibly be interpreted as an attempt to restrict the broader disclosure and all asserted claims. Defendants' proposed function fails.

Turning to disclosed structure, Defendants' objections echo those discussed for the "processing means for arranging" limitation above. Contrary to their allegations, CCE's proposed construction is tied directly to the disclosure and reflects the understanding of one skilled in the art, who would have knowledge of how parameters are used in wireless systems, including UMTS. It does not "improperly inject a different function" into the claim — it simply articulates how the processor performs the claimed function.

5

Further, Defendants again fail to recognize that, as a matter of law, structure corresponding to a claimed function is found in the disclosure. Here, the patent clearly teaches that the structure for the claimed function is a processor configured to apply *a device-specific CFN-TGSN parameter combination*. Defendants' own expert acknowledges that the purpose of the invention is to provide *device-specific delays*. *See* Doc. No. 288-1 at ¶ 35 ("The alleged invention aims to solve this purported problem by 'defining different delays for the measurement patterns of said terminals [mobile devices] so that the gaps of different terminals are substantially at different locations in the time-slot frame,' or gaps of different terminals are in different frames."). The specification makes clear this is achieved with a CFN-TGSN parameter combination specific to individual devices. *See, e.g.*, Ex. D at Fig. 5; 3:19-26; 7:12-17 ("Instead of setting the same delay for all mobile stations UE, the fixed network UTRAN can preferably allocate different values for the parameters CFN and TGSN for each mobile station…."); 7:59-62 ("In the table on the right, different delays are preferably defined according to the invention to the user equipment UE1, UE2, UE3, and UE4 by defining differing values for the parameters CFN and TGSN of each user equipment"); 8:2-11; 8:44-51.

CCE's proposal correctly reflects the disclosed structure and should be adopted.

### III. U.S. Patent No. 7,941,174

#### A. "a transmit power difference which is to be maintained" (cl. 1, 18) / "maintaining a previously determined transmit power difference" (cl. 11)

Defendants admit that their proposal is based on a single passage in column 6. Doc. No. 288 at 9. That passage plainly does not define "maintaining" or "to be maintained," but rather describes the "transmit power difference" in a particular embodiment. Ex. E at 40-49. And while it and helpfully clarifies that that difference is "maintained" beginning at the start of a message transmission, it does not provide a basis for erasing "maintaining" and "to be

6

maintained" language from the claims. Moreover, despite Defendants' repeated allusions to the "sole problem" allegedly identified in the patent, their response fails to explain why the plain language of the claim ostensibly fails to align with that purpose or how their interpretation bears on their indefiniteness allegations.

Defendants' proposal, at bottom, vitiates a claim element ("maintaining") based on an erroneous interpretation of a particular embodiment. It is improper and must be rejected.

## IV.    U.S. Patent No. 8,055,820

### A.    "the designating unit" (cl. 12)

Defendants' attempt to invoke § 112(6) in claim 12 conflicts with the claim language (which, by reciting "*wherein the* designating unit," clearly harkens back to a prior element), other independent claims (which corroborate CCE's proposal), the specification (which provides no support for multiple separate "designating" structures), and the prosecution history (which reveals that "the designating unit" was drafted to refer back to the "designating" element and the subject claim language is an obvious, minor error). It is without merit and must be rejected.

Indeed, even if the intrinsic evidence supporting CCE's construction is set aside, Defendants' argument falls short because the patent expressly states that "units" correspond to structure — hardware and software components. Ex. F at 7:15-24. Moreover, "the designating unit" is claimed as part of the definite structure of claim 12, which includes an "apparatus" comprising a processor, memory, and computer program code, further supporting the conclusion that one skilled in the art would understand "the designating unit" to connote structure. Accordingly, the term "designating unit" has intrinsically-defined structure (i.e., hardware and software) connoting meaning to persons of ordinary skill in the art, and it does not invoke § 112(6). *Williamson v. Citrix Online, LLC*, 2014 U.S. App. LEXIS 21115, at *15-17 (Fed. Cir.

Nov. 5, 2014) ("A claimed expression cannot be said to be devoid of structure if it is used in common parlance or by persons of skill in the pertinent art to designate structure, *even if the term covers a broad class of structures and even if the term identifies the structures by their function*.… The district court, in characterizing the word 'module' as a mere nonce word, failed to appreciate that the word 'module' has understood dictionary meanings as *connoting either hardware or software structure* to those skilled in the computer arts.") (emphasis added) (internal citations omitted).

V. **U.S. Patent No. 7,218,923**

   A. **"a diverting unit configured to divert a message of the messages sent from the application program and destined for the communication network" (cl. 24)**

As stated in its Opening Brief, CCE does not dispute that "diverting" and "redirecting" have a consistent meaning, but Defendants' proposal goes much further. That Defendants' "path" paradigm is was invented for litigation is confirmed by their failure to identify any reference to a "path" in the intrinsic record. Indeed, their response depends on Defendants' own characterizations of the specification, and their own drawings superimposed on the patent figures, rather than the patent itself. Defendants' extrinsic argument cannot provide an adequate basis for rewriting the claims.

Moreover, their characterization of CCE's infringement theory is incorrect. CCE does not allege that "diverted" messages are treated exactly the same as other messages that are not "diverted." Rather, CCE maintains that the claimed "diversion" may be implemented at a logical or physical level, and the patent does not contemplate pre-ordained "paths" for particular messages. The parties' dispute is centered on Defendants' proposal, which goes beyond the claim language to inject a non-infringement position that is unwarranted.

8

### B. "based on the message" (cl. 24)

Defendants' wrongly allege that embodiments described in the specification are mutually exclusive. Nothing in the patent precludes the "controlling entity" from evaluating ***both*** the message and the application behavior, or from evaluating the message ***to*** evaluate the application behavior. The passage in column 4 on which Defendants rely simply explains that, upon receiving a "request," the "trusted agent then examines the request and checks, whether the application behaves as it should be behaving." Ex. K at 4:59-63 (emphasis added). The embodiment described in column 6 ***adds*** that the "the trusted agent compares the behavior of the application to the policy rules at step 8." *Id.* at 6:31-37.

Neither of these passages demand that examination of a message or "the behavior of the application" must be performed in lieu of one another. The patent leaves open the possibility that both may occur in a single embodiment. Nor do they state that the "trusted agent" must take action based on the "content" of the messages as opposed to the presence of the message or the fact that the message was sent, as Defendants argue. Doc. No. 288 at 19. "Examining" the message does not inherently require inspecting the "content" of the message; to the contrary, "examination" could entail inspecting characteristics of the message other than its "content" (e.g., its timing, origin, destination, size, etc.). Accordingly, Defendants attempt to delimit how the controlling entity is configured to act "based on the message" is unfounded and improper.

9

Dated: **December 2, 2014**.

By:

*/s/ Edward R. Nelson, III*
Edward R. Nelson, III
enelson@nbclaw.net
Texas State Bar No. 00797142
Brent N. Bumgardner
bbumgarnder@nbclaw.net
Texas State Bar No. 00795272
Barry J. Bumgardner
barry@nbclaw.net
Texas State Bar No. 00793424
S. Brannon Latimer
blatimer@nbclaw.net
Texas State Bar No. 24060137
Thomas C. Cecil
tcecil@nbclaw.net
Texas State Bar No. 24069489
NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
Claire Abernathy Henry
Texas State Bar No. 24053063
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Rd. Ste. 220
Longview, Texas 75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com
wh@wsfirm.com
claire@wsfirm.com

**ATTORNEYS FOR PLAINTIFF CELLULAR COMMUNICATIONS EQUIPMENT LLC**

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 2nd day of December, 2014, I electronically filed the foregoing document with the clerk of the Court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the Court's electronic case filing system.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                */s/ Edward R. Nelson, III*