# Exhibit "H"

Trials@uspto.gov Paper 10
571–272–7822 Entered: January 15, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NEC CORPORATION OF AMERICA,
NEC MOBILE COMMUNICATIONS, LTD., HTC CORPORATION,
HTC AMERICA, ZTE (USA), INC., PANTECH CO., LTD.,
PANTECH WIRELESS, INC., LG ELECTRONICS, INC., and
LG ELECTRONICS U.S.A., INC.,
Petitioner,

v.

CELLULAR COMMUNICATIONS EQUIPMENT, LLC,
Patent Owner.
_____

Case IPR2014-01133
Patent 7,218,923 B2
_____

Before JENNIFER S. BISK, GREGG I. ANDERSON, and
ROBERT J. WEINSCHENK, *Administrative Patent Judges*.

WEINSCHENK, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-01133
Patent 7,218,923 B2

discloses each and every limitation of claims 1, 2, 4, 5, 8, 24, 25, and 31. *See* Pet. 34–41.  We are *not* persuaded on this record, however, that Petitioner demonstrates a reasonable likelihood of prevailing in showing that D'Aviera discloses each and every limitation of claims 26, 39, and 40.

Independent claim 1 recites "sending messages from an application program towards a communication network," "diverting a message of the messages to a controlling entity," and "controlling in the controlling entity whether the application program behaves in a predetermined manner" with "the controlling being performed before the message is transmitted . . . to the communication network." Ex. 1001, col. 9, ll. 10–22.  Independent claim 24 recites similar limitations. *Id.* at col. 10, l. 58–col. 11, l. 5.  D'Aviera discloses that "information to be sent to the INTERNET is intercepted by an isolator engine (ISOLATOR) 225, which in turn retransmits the information to the network module 220." Ex. 1008, 3, ll. 21–24; Pet. 35–36.  Before retransmitting the information to the network module, the isolator engine determines whether the information contains any privacy items, and, if so, prevents that information from being sent to the network module. Ex. 1008, 3, ll. 26–29, 6, ll. 14–22; Pet. 36.

Patent Owner argues that, in D'Aviera, the isolator engine intercepts *all* outbound operations of an application, and, therefore, D'Aviera does not disclose *diverting* the outbound operations.  Prelim. Resp. 30–31.  Patent Owner's argument is not persuasive.  As discussed above, D'Aviera discloses that the isolator engine intercepts information sent to the internet.  Thus, D'Aviera discloses changing the course of information so that its destination is the isolator engine instead of the internet.  The challenged claims recite diverting "a message of the messages." *See, e.g.,* Ex. 1001,

10

IPR2014-01133
Patent 7,218,923 B2

col. 9, ll. 15–16. Because D'Aviera discloses diverting all messages sent toward the internet, it discloses diverting at least one message, as required by the challenged claims. On this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing that D'Aviera discloses each and every limitation of claims 1, 2, 4, 5, 8, 24, 25, and 31.

Dependent claim 26 recites that "the controlling entity is configured to reside in a tamper resistant area of the terminal." Ex. 1001, col. 11, ll. 10–12. The portion of D'Aviera cited by Petitioner with respect to claim 26 discloses that the isolator engine can be provided on a floppy disk, preloaded onto a hard disk, or integrated in a chip of semiconductor material. Pet. 39. As Patent Owner points out (*see* Prelim. Resp. 32–33), Petitioner does not demonstrate how that disclosure in D'Aviera shows expressly or inherently that the isolator engine is configured to reside in a tamper resistant area. Therefore, on this record, Petitioner does *not* demonstrate a reasonable likelihood of prevailing in showing that D'Aviera discloses each and every limitation of claim 26.

Independent claims 39 and 40 recite a "diverting means." Ex. 1001, col. 12, ll. 27–29, col. 12, ll. 39–42. As discussed above, the corresponding structure for the "diverting means" is an SIP protocol stack or a middleware modification module residing between an application and an SIP protocol stack, and structural equivalents thereof. *See supra* Section II.A.2. Petitioner does not argue that the isolator engine or any other structure in D'Aviera is an SIP protocol stack or a middleware modification module residing between an application and an SIP protocol stack, or a structural equivalent thereof. *See* Pet. 40. Therefore, on this record, Petitioner does *not* demonstrate a reasonable likelihood of prevailing in showing that

IPR2014-01133
Patent 7,218,923 B2

D'Aviera discloses each and every limitation of claims 39 and 40.

       3.    *Anticipation of Claims 24, 26, and 40 by Williamson*

Petitioner argues that claims 24, 26, and 40 are anticipated by Williamson. Pet. 41. Williamson relates to restricting the propagation of viruses in a network. Ex. 1009 ¶ 7. We have reviewed Petitioner's assertions and supporting evidence, and, for the reasons discussed below, we are *not* persuaded on this record that Petitioner demonstrates a reasonable likelihood of prevailing in showing that Williamson discloses each and every limitation of claims 24, 26, and 40.

Each independent claim challenged by Petitioner recites diverting a message to a controlling entity. Ex. 1001, col. 9, ll. 15–16, col. 9, ll. 61–62, col. 10, ll. 62–65, col. 11, ll. 38–41, col. 12, ll. 27–29, col. 12, ll. 39–42. Petitioner argues that the Viral Anti-propagation Software ("VAPS") in Williamson corresponds to the "controlling entity" recited in the challenged claims. Pet. 41. With respect to the diverting limitation of the challenged claims, Petitioner argues that the VAPS "handles all requests to send outbound data from the workstation 910." *Id.* at 42 (quoting Ex. 1009 ¶ 82). Paragraph 82 and Figure 9 of Williamson, which are cited by Petitioner, indicate that a message is intended to be sent to the VAPS first and then the network. Ex. 1009 ¶ 82, Fig. 9; Pet. 42. Petitioner does not identify anything in Richardson that discloses changing the course of a message. Therefore, on this record, Petitioner does *not* demonstrate a reasonable likelihood of prevailing in showing that Williamson discloses each and

12

IPR2014-01133
Patent 7,218,923 B2

every limitation of claims 24, 26, and 40.[3]

    4.    *Obviousness of Claims 1–5, 8, 9, 24–26, 31, 33, 39, and 40 over Calder and Richardson*

Petitioner argues that claims 1–5, 8, 9, 24–26, 31, 33, 39, and 40 would have been obvious over Calder and Richardson. Pet. 43. We have reviewed Petitioner's assertions and supporting evidence, and, for the reasons discussed below, we are persuaded on this record that Petitioner demonstrates a reasonable likelihood of prevailing in showing that claims 1, 2, 4, 5, 8, 24, 25, and 31 would have been obvious over Calder and Richardson. *See id.* at 43–54. We are *not* persuaded on this record, however, that Petitioner demonstrates a reasonable likelihood of prevailing in showing that claims 3, 9, 26, 33, 39, and 40 would have been obvious over Calder and Richardson.

Independent claim 1 recites "sending messages from an application program towards a communication network," "diverting a message of the messages to a controlling entity," and "controlling in the controlling entity whether the application program behaves in a predetermined manner," with "the controlling being performed before the message is transmitted . . . to the communication network." Ex. 1001, col. 9, ll. 10–22. Independent claim 24 recites similar limitations. *Id.* at col. 10, l. 58–col. 11, l. 5. Calder teaches that "the client computer includes an interception module for intercepting a request from the application to output data to an output device." Ex. 1010

---

[3] For at least the same reasons, Petitioner does *not* demonstrate a reasonable likelihood of prevailing in showing that Williamson discloses the diverting limitation of the challenged claims even if construed, as Petitioner proposes, to mean "transferring at least some of the messages to a different destination than their intended destination."