# Exhibit "B"

# EASTERN DISTRICT OF TEXAS LOCAL RULES ADVISORY COMMITTEE COMMENTARY REGARDING MODEL ORDER FOCUSING PATENT CLAIMS AND PRIOR ART TO REDUCE COSTS

Based on a request from the court, a working group of the Local Rules Advisory Committee undertook a review of the Model Order Limiting Excess Patent Claims and Prior Art prepared by the Federal Circuit Advisory Council's Model Order Committee (the "Model Order"). The working group's goal was to determine whether the Model Order, or some portion or variation of it, should be recommended for inclusion in the Local Rules or practice of the Eastern District. In this regard, the working group's task was similar to that of the working group formed to undertake a review of the Federal Circuit Advisory Council's Model Order Regarding E-Discovery in Patent Cases.

After consideration, the working group determined that a revised version of the Model Order could be helpful to practice in the Eastern District. However, rather than incorporating the revised version in the Local Rules, the working group recommended including it as an appendix to the Local Rules, much like the version of the Model Order Regarding E-Discovery which was adopted by the court. This approach allows flexibility for both litigants and the court to tailor limits on asserted claims and prior art references based on differing facts, case to case. This approach also allows the court to decide questions that may arise regarding the

interpretation or application of the recommended limits in a particular case without having to generally construe or interpret a local rule.

Recognizing the substantial work that went into the Model Order, as well as the policy considerations that motivated it, the working group began its effort with the Model Order as the baseline. The working group then made the following changes to the Model Order based on its members' experience with practice in the Eastern District representing both plaintiffs and defendants in patent cases:

1. Revising the title to emphasize the goal of reducing the burden on the court and lowering the expense of the parties by focusing patent cases to the issues at the core of the dispute.

2. Revising footnote 1 to reflect that the initial consideration of the limitations for a given case should be flexible, taking account of all relevant and foreseeable case specific issues. This is achieved by: 1) relocating and amending language from footnote 2 to demonstrate that all pertinent issues presented by the parties should be considered before imposing case specific limitations, and 2) changes to paragraph 5 requiring that "post-entry" motions to modify the order's numerical limits require a showing of good cause, while committing all other modifications to the court's discretion. The last sentence of footnote 1 is revised to reflect the fact that many judges

3. Extending paragraph 2's deadline to serve a Preliminary Election of Asserted Claims to the date set for the completion of claim construction discovery pursuant to P.R. 4-4. In the experience of the members of the working group, the costs associated with invalidity contentions and claim construction are two of the most significant costs incurred in the pretrial phase of patent cases. However, reducing the cost of invalidity contentions through an early election has proved elusive considering the early stage at which invalidity contentions are served and the overriding need to give both plaintiffs and defendants sufficient information to make a meaningful election. Targeting the cost of claim construction therefore seems to be a more feasible object of the initial narrowing. The working group extended the Model Order's deadline for the preliminary election to the date for the completion of claim construction discovery. The working group made this extension for two reasons. First, the later preliminary election reflects the fact that the completeness of an accused infringer's initial production of documents sufficient to show the operation of the accused instrumentality is often subject to reasonable debate. The later preliminary election allows time to resolve such matters. Second, the later deadline allows initial claim

require the parties to submit joint proposed docket control and discovery orders rather than a Fed. R. Civ. P. 26(f) discovery plan.

    construction disclosures to take place, giving the parties the benefit of each other's claim construction positions in making their preliminary elections. At the same time, the preliminary election is early enough to avoid undue expense from briefing and arguing excess claim construction issues. Significantly, the timing of the preliminary election will also lessen the court's burden in preparing for, hearing, and ruling on claim construction issues.

4. Relocating and amending the second sentence of footnote 2 to footnote 1 where it better fits with the discussion of the flexible considerations appropriate before imposing limits in a given case. The slight amendments to the relocated sentence avoid implication that the Model Order's identified circumstances warranting enlargement of the order's limitations are exhaustive or limited to expanding only the number of prior art references, not also the number of asserted claims.

5. Revising paragraph 3's deadline to serve a Final Election of Asserted Claims to not later than 28 days before the service of expert reports by the party with the burden of proof, rather than the Model Order's tethering of the deadline to the issuance of the claim construction order. The principal object of the final narrowing is lessening the costs associated with expert witnesses and final preparation of the case for trial. Requiring the plaintiff

to make its final election 28 days before the deadline to serve opening expert reports permits the parties' experts to focus on those claims and references that will remain for trial. The timing of the final election also gives the parties maximum opportunity to consider discovery and claim construction in making their election, and may move the presentation of any discovery disputes to points earlier in the case. The anticipated cost savings is necessarily dependent on the issuance of a claim construction order sufficiently far in advance of the narrowing date to permit the parties to make a meaningful election. In the experience of the members of the working group, this will be the usual situation. However, should the court's claim construction order be delayed, the parties may need to seek an extension of the deadline to make their final election until some period after the issuance of the order, a matter committed to the court's discretion as discussed in point 7, below. Revision of paragraph 3's deadline for the final election also reflects the reality that many judges set deadlines for expert reports which are not tied to the issuance of the claim construction order.

6. Supplementing paragraph 3 by stating that each obviousness combination counts as a separate prior art reference. A small number of prior art references can be combined to form an exponentially greater number of bases for invalidity. For the limit on prior art references to be meaningful,

5

      each obviousness combination should count as a separate prior art reference. Not imposing this requirement for purposes of the preliminary election gives defendants increased flexibility to develop the appropriate combinations as discovery proceeds. However, by the time of the final election, each basis for invalidity should be specifically identified.

7. Revising paragraph 5 to provide greater flexibility to modify the order's requirements depending on the circumstances of the case. Flexibility allows the order to account for such things as adjustments in the disclosure deadlines necessitated by the timing of the issuance of the claim construction order or other case specific events. However, post-entry motions to modify the numerical limits of the order remain subject to a showing of good cause.