**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | |
| Plaintiff, | Civil Action No. 6:13-cv-507 |
| v. | JURY TRIAL DEMANDED (Consolidated Lead Case) |
| HTC CORPORATION et al., | |
| Defendants. | |

**APPLE'S OPPOSITION TO PLAINTIFF'S EMERGENCY**
**MOTION TO ENFORCE LIMITS ON INVALIDITY REFERENCES**
**AND TO STRIKE PORTIONS OF THE ACAMPORA INVALIDITY REPORT**

# I.

## INTRODUCTION

CCE's Emergency Motion to Enforce Limits on Invalidity References is not what it seems.  CCE knows exactly what prior-art invalidity defenses Apple may present at trial: two anticipation defenses, two single-reference obviousness defenses, and five specific combination obviousness defenses, for a total of nine prior art invalidity defenses.  When CCE took issue with the way in which Apple's Final Election identified these defenses, Apple restated the defenses in the exact language CCE requested and was willing to enter into a stipulation memorializing that language.  So it is simply not true when CCE represents that it filed the Motion because Apple is pursuing "at least twenty-seven references," refuses "to modify or withdraw its improper allegations," and thus "leaves CCE to find needles in a haystack" as to what invalidity defenses Apple may present at trial.  (Mot. 1, 2, 7.)  This Motion is aimed at a different objective: using the Model Order to curtail evidence about *other* issues at trial.

Prior art invalidity defenses are evaluated through the eyes of a person having ordinary skill in the art, taking into account the information such a person knows.  This is because the information known to that person affects how she understands, interprets, and extrapolates the disclosure contained in a prior art reference or combination of references.  Thus, like the background of the invention and the state of the art, the background knowledge held by those skilled in the art is a required factor in determining whether a specific reference or references anticipate or render obvious the asserted claims.  CCE does not dispute this and, indeed, does not dispute Apple's right to present expert testimony about what one skilled in the art knew at the time the application that led to the '820 patent was filed.  CCE likewise does not dispute Apple's right to present *all* of the evidence it disclosed to demonstrate the background of the invention and the state of the art, including Dr. Acampora's discussion of unelected prior art references.

2

But CCE singles out the background knowledge of those skilled in the art for special restrictions unsupported by the Model Order: CCE objects to Dr. Acampora's testimony about unelected references to demonstrate what those skilled in the art knew at the relevant time.  To crystallize this point, this Motion is essentially about whether the following line of questioning would be appropriate at trial:

> Q:     Dr. Acampora, based on your experience in this field, what background knowledge about buffer status reporting would someone skilled in the art have had at the time the application for the '820 patent was filed?
>
> A:     As we have been discussing in my testimony about the state of the art, this was a very crowded field.  So a person skilled in the art at that time had the benefit of a variety of teachings.   In addition to Chun, Wu, Lee, and Ye, which we will talk about in great detail today, a person of ordinary skill in the art would have known about the [unelected reference], [unelected reference], [unelected reference], and [unelected reference] that we just discussed, and the techniques, technologies, and concepts that they describe.

Such a question is appropriate.  No one disputes that the answer is contained within the four corners of Dr. Acampora's report.  This Motion therefore presents a basic question of fairness: should Apple be permitted to present evidence of the depth and breadth of what those skilled in the art actually knew, or should it be forced to pretend—and mislead the jury to believe—that the only thing known to those skilled in the art were the nine elected references, thereby stripping skilled artisans of their background knowledge and departing from the legal standard?  Apple has identified its nine anticipation and obviousness elections with specificity and will abide by them.  But nothing in the Model Order supports limiting Dr. Acampora's testimony on other issues, including the background knowledge of skilled artisans, and neither should this Court.  This Motion should be denied.

## II.
## THIS MOTION IS NOT REALLY ABOUT THE NUMBER OF ASSERTED REFERENCES

Although CCE's Motion is framed as broadly implicating Apple's Final Election of Prior Art References and Dr. Acampora's prior-art invalidity opinions, the parties' meet-and-confer dialogue illustrates that the Motion is aimed at resolving a different dispute.

### A.      Apple Identified Dr. Acampora's Prior Art Invalidity Testimony

On April 27, Apple served its Final Election of Asserted Prior Art.  Because the Model Order calculates references per asserted patent (as opposed to per asserted claim), Apple's Final Election disclosed references on a per-patent basis (e.g., where A+B renders claim 6 obvious, and B+C renders claim 12 obvious, Apple disclosed A+B+C).  The same day, Apple served Dr. Acampora's invalidity report, which addresses anticipation and obviousness on a claim-by-claim basis.

On April 29, CCE objected to the report, mislabeling Apple's Final Election in the same way that its Motion now does to assert that it covers only five of Dr. Acampora's prior-art invalidity opinions.  *See* Mot. 2.  The parties corresponded over the weekend to clarify CCE's objections and conferred on Monday, May 2.  Exh. 1 (M&C Correspondence) at 13-19.  After the meet-and-confer, CCE provided a list of prior art invalidity opinions that it believed were in Dr. Acampora's report—the same list that it now includes on pages 4-5 of its Motion.  *Id.* at 12-13.  Apple believes that its Final Election was properly made on a per-patent basis.  But to avoid burdening the Court with a dispute, the next day Apple identified the nine prior art invalidity

opinions identified in CCE's chart (all included within the Final Election) that Apple may ask

Dr. Acampora to testify about at trial.[1]  *Id.* at 12.  Those defenses are:

| | |
|---|---|
| 1 | Anticipated by U.S. Patent No. 8,687,565 ("Chun Patent") |
| 2 | Anticipated by U.S. Patent No. 7,769,926 ("Wu Patent") |
| 3 | Obvious by WIPO WO 2006/052086 ("Lee") |
| 4 | Obvious by U.S. Patent No. 8,031,655 ("Ye") |
| 5 | Obvious by combination of Ye and U.S. Patent No. 8,243,666 ("Torsner") |
| 6 | Obvious by combination of Ye and  3GPP Proposal R2-074682 ("Ericsson Proposal") |
| 7 | Obvious by combination of Lee and 3GPP Proposal R2-063414 ("Alcatel Proposal") and Ericsson Proposal |
| 8 | Obvious by combination of Lee and Alcatel Proposal and Torsner |
| 9 | Obvious by combination of 3GPP TS 25.309 v.6.3.0 Release 6 and TS 25.321 v.6.7.0 Release 6 and Ericsson Proposal |

This list of prior art invalidity defenses did not change through the course of the parties'

discussions about a potential stipulation, and it remains the same today.  Thus, CCE knew when

it filed this Motion—indeed, by May 3—that Apple will not ask Dr. Acampora to testify about

"twenty-seven references" or rely on the purported "catchall" paragraph to surprise CCE with

new combinations at trial.  *See* Mot. *passim*.  CCE has *never* articulated an objection to the above

list of nine opinions, and no such objection is found in its Motion.

**B.     CCE's Effort To Limit Apple's Evidence About Issues Not Covered By The Model Order Emerged As The Real Dispute**

After May 3, the parties' discussion about CCE's objection centered on issues not

covered by the Model Order, which by its terms limits only the number of anticipation and

obviousness defenses that a party may present at trial.  Exh. 1 at 8-9.  Specifically, the parties

discussed  Dr.  Acampora's  presentation  of  evidence,  including  testimony  about  unelected

---

[1] The Fuja Stipulation, which CCE mentions in its Motion but does not attach, was similarly the product of compromise.  As it states, "By entering into this stipulation, CCE and the Fuja Sponsors do not agree that this stipulation accurately reflects the requirements of the Model Order Focusing Patent Claims and Prior Art to Reduce Costs ("Model Order"), and enter into this stipulation in the particular circumstances of this case solely in an effort to avoid burdening the Court with a dispute."  Exh. 3 at 1.

references, with respect to other issues germane to the case.  For example, both parties agreed that Dr. Acampora is free to testify about the background of the alleged invention, and may discuss unelected references when doing so.  *Id*. at 8-9; Exh. 2 (Draft stipulation attached to May 5 E. Nelson email) at ¶ 5; *see also* Exh. 3 (Fuja Stipulation) at ¶ 4.  Both parties also agreed that Dr. Acampora is free to discuss unelected references when testifying about the state of the art.  Exh. 1 at 8-9; Exh. 2 at ¶ 5; *see also* Exh. 3 at ¶ 4.  And also when testifying about contemporaneous invention as a secondary consideration of obviousness.  Exh. 1 at 8-9; Exh. 2 at ¶ 5; *see also* Exh. 3 ¶ at 4.  All of this is consistent with the limited scope of the Model Order.

But when it came to the background knowledge of those skilled in the art, CCE sought to create special rules.  Although it acknowledged that Dr. Acampora can testify about what one skilled in the art knew, CCE took the position that he could not substantiate that testimony by discussing unelected references.[2]  Exh. 1 at 2.  Indeed, CCE took the position that *any* testimony that those skilled in the art knew about a specific unelected reference—regardless of how, or when, or why it is presented—constitutes an attempt to make an unelected obviousness combination in violation of the Model Order.  *Id.*  As Apple explained, it will not attempt to combine unelected references with elected references to make new obviousness combinations.  *Id.* at 1, 2.  But CCE maintained its position that all such testimony violates the Model Order, regardless of context.  *Id.* at 1, 2.  Though unstated in the Motion, that is the dispute this Motion seeks to resolve.  *Id.* at 2 ("You have identified precisely the disconnect we have relative to the stipulation.").

---

[2] Apple understands that the Fuja sponsors disagree with CCE's implication that the Fuja Stipulation does not allow such testimony.  *See* Mot. at 6.

## III.
## APPLE'S PROFFERED TESTIMONY IS DIRECTED TO SUPREME COURT AND FEDERAL CIRCUIT REQUIREMENTS

Time and again, CCE asserted that any use of unelected references to prove knowledge of those skilled in the art amounts to an undisclosed obviousness combination.  That is wrong, and it is not how Apple will use Dr. Acampora's testimony about unelected references.

### A.     The Background Knowledge Held By Those Skilled In The Art Is Required For Determining Obviousness

In *KSR International Co. v. Teleflex, Inc.*, the Supreme Court emphasized that, when evaluating obviousness, allegedly invalidating prior art must be read in light of the background knowledge that a person skilled in the art would have.  550 U.S. 418 (2007).  As the Federal Circuit recently observed, "[i]n *KSR*, the Supreme Court criticized a rigid approach to determining obviousness based on the disclosures of individual prior-art references, with little recourse to the knowledge, creativity, and common sense that an ordinarily skilled artisan would have brought to bear when considering combinations or modifications."  *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).  Instead, "the Court required an analysis that reads the prior art in context, taking account of 'demands known to the design community,' 'the background knowledge possessed by a person having ordinary skill in the art,' and 'the inferences and creative steps that a person of ordinary skill in the art would employ.'"  *Id.* (quoting *KSR*, 550 U.S. at 418).  As one example, the Supreme Court explained that:

> ***Often, it will be necessary for a court to look to interrelated teachings of multiple patents***; the effects of demands known to the design community or present in the marketplace; ***and the background knowledge possessed by a person having ordinary skill in the art***, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007).[3]  As the Supreme Court's explanation illustrates, the background knowledge of those skilled in the art is distinct from the prior art reference or combination that is alleged to render the asserted claim obvious.  *Id.*  It is not itself the material that allegedly invalidates a claim, it is the material known to a person skilled in the art that would shape the way that person views, understands and extrapolates the references that allegedly invalidate a claim.

Critical to consider in deciding this Motion is the Federal Circuit's caution that background knowledge must be proven with evidence: "In recognizing the role of common knowledge and common sense, we have emphasized the importance of a factual foundation to support a party's claim about what one of ordinary skill in the relevant art would have known." *Randall*, 733 F.3d at 1362.

**B.     Apple Intends To Rely On Unelected References To Prove The Background Knowledge Held By Those Skilled In The Art**

To comply with this Supreme Court and Federal Circuit precedent, Apple intends to present testimony from Dr. Acampora about the background knowledge held by those skilled in the art at the relevant time.   To substantiate that testimony, Dr. Acampora may refer to the disclosures of elected or unelected references, all of which opinions are disclosed in his report. For example, Dr. Acampora may offer the following opinion from his report:

> Piggybacking is a well-understood concept to one of skill in the art of taking advantage of available space in another transmission to communicate information, such as a BSR, and that for the BSR to be piggybacked, it would need to be in a format that would fit within the available space for transmission. An example of piggybacking is described in U.S. Patent No. 6,772,215, which discusses including control information in the PDU if enough space exists to fill the padding fields with a status message. U.S. Pat. No. 6,772,215 2:9-16; 9:64-67; see, also, e.g., 3GPP Proposal R2-042462, § 3.

---

[3] Emphasis added unless otherwise noted.

Exh. 1 at 2.   To be clear, Dr. Acampora would not opine that these references, which are unelected, anticipate the asserted claims, or seek to combine them with any of the nine prior art invalidity defenses in Apple's election.   The objective is not to achieve an unelected combination.   Instead, he would present this testimony in direct reference to the knowledge held by those skilled in the art—in other words, as evidence of the foundational knowledge that one skilled in the art would have *before* he or she reviewed and interpreted the references that are asserted to be invalidating art.

## IV.
## PRECLUDING APPLE FROM PRESENTING A FULL RECORD AS TO KNOWLEDGE IN THE ART IS UNWARRANTED AND PREJUDICIAL

Nothing in the Model Order prohibits Apple from presenting a full record showing the background knowledge of those skilled in the art, and basic fairness requires that it be permitted to do so.

### A.      The Model Order Does Not Restrict Evidence Of Background Knowledge

The scope of the Model Order limits the number of prior art references asserted to anticipate or render obvious a patent-in-suit:

> By the date set for the service of expert reports by the party with the burden of proof on an issue, the patent defendant shall serve a Final Election of **Asserted** Prior Art, which shall identify no more than six **asserted** prior art references per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 references.

Mot. Exh. A at ¶ 3.   Where, as here, one patent is asserted, the defendant is limited to nine references.   *Id.*   As early iterations of what became the Model Order stated explicitly, this requirement does not curtail the ability to present other prior art for other purposes.   *See, e.g., ThinkOptics, Inc. v. Nintendo of Am., Inc.*, Case No. 6:11-cv-455, 2013 WL 5934471, at *1 n.1 (E.D.Tex. Sept. 11, 2013) (Davis, J.) ("[T]his Order is not intended to limit the parties' use of other patents, publications, or instrumentalities for purposes other than as prior art, such as, for

example, the *level of ordinary skill in the art, background of the technology at issue, or a motivation to combine references*.").   Judge Davis's explanatory language tracks the Supreme Court and Federal Circuit standards discussed above, and permits exactly the type of evidence about background knowledge that CCE tries to block with this Motion.

Judge Love's comments from the bench and his Order in the *Smartphone* case cited by CCE do not say otherwise.  Indeed, Judge Love resolved a different question altogether.  There, the defendants elected only anticipation references, and later sought to present single-reference obviousness arguments based on the same references.  Exh. 4, at 14:3-9, 18:22-19:8, 20:3-14. Judge Love acknowledged that it is permissible to make a single-reference obviousness argument, but counted it as an additional reference under the Model Order:

> And there would be nothing that would prevent you from taking reference A and saying it anticipates, and then ***taking reference A and saying, well, even if it doesn't have something, based on knowledge of skill in the art, you could modify that***, here's why you would modify that, here's why you would come up with what is in the particular patent at issue. ***But that's a reference***.

*Id.* at 22:4-11; *accord id.* at 23:18-24:4; Exh. 5 ("A contention that a patent claim is obvious must be based on prior art and thus such a contention is a 'prior art reference.").  Because the defendant elected nine anticipation references, Judge Love determined that its nine additional single-reference obviousness arguments exceeded the limit.  Exh. 4 at 24:5-13.  Judge Love's Order states the same conclusion.  Exh. 5.

By CCE's own count, Apple will ask Dr. Acampora to testify about no more than nine anticipation, single-reference obviousness, and combination obviousness references, in total. Thus, Judge Love's ruling has no bearing on the dispute actually before this Court: whether the Model Order restricts Dr. Acampora's opinions about the background knowledge held by those

skilled in the art.  And, as the discussion above illustrates, the Model Order imposes no such limitation.

**B.**     **Limiting The Evidence of Background Knowledge Would Unfairly Prejudice Apple**

Adopting CCE's position would create a false trial record.  As Dr. Acampora's report discusses, by the time the application for the '820 patent was filed, this was an established field and those skilled in the art knew a wealth of information, techniques, and technologies pertinent to the field.  Were the Court to adopt it, CCE's position would strip those skilled in the art of most of this knowledge.  Dr. Acampora would be forced to pretend that a person having ordinary skill in the art, through whose eyes obviousness is measured, knew only of the nine elected references.  And because the jury would hear only that erroneous conclusion, neither it nor the Court during post-trial motions would be applying the correct legal standard when evaluating obviousness.  *See,* e.g.*, Randall*, 733 F.3d at 1362 ("[T]he Court required an analysis that reads the prior art in context, taking account of 'demands known to the design community,' 'the background knowledge possessed by a person having ordinary skill in the art,' and 'the inferences and creative steps that a person of ordinary skill in the art would employ.'" *(*quoting *KSR*, 550 U.S. at 418)).

For all of these reasons, a forced and arbitrary reduction of the evidence available in the record to prove the background knowledge held by those skilled in the art violates basic principles of fairness.  Indeed, it would violate due process. *Saunders v. Shaw*, 244 U.S. 317, 639-40 (1917) (in civil action, finding due process violation where the case was decided without defendant having proper opportunity to submit some of his evidence, because "we do not see in the record an absolute warrant for the assumption, and therefore cannot be sure that the defendant's rights are protected without giving him a chance to put his evidence in."); *accord*

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) ("As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged."); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the opportunity to be heard.  It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (quotations omitted).

CCE's position is unsupported by the Model Order, unfairly prejudices Apple, and invites error.  The Court should reject it.

## V.
### EVEN IF THIS COURT LIMITS EVIDENCE OF BACKGROUND KNOWLEDGE, CCE'S REQUESTED RELIEF SHOULD BE DENIED

This Motion should be denied outright for the reasons discussed above.  But even if the Court were to preclude Dr. Acampora from discussing unelected references when testifying about the background knowledge held by those skilled in the art, the relief CCE seeks is prejudicially disproportionate.  CCE asks the Court to strike "all prior art-based invalidity bases in the Acampora Report not expressly identified in Apple's Final Election…such that they need not be addressed in CCE's rebuttal report," and then—knowing better—misrepresents that relief as leaving Dr. Acampora with five anticipation references.  (Mot. 7.)  CCE piles on requests for an extension, attorneys' fees, and costs, alleging wrongdoing by Apple during negotiations about the proposed stipulation, but strategically omitting some of the parties' communications.  The full record of those discussions is attached as Exhibit 1.  The Court can assess for itself the nature of those communications.  *See*, *e.g.*, Exh. 1 at 3, 5-7.  The record does not support such relief.

As to CCE's request for substantive relief, the nine prior art invalidity defenses about which Dr. Acampora may testify at trial were included in Apple's Final Election, as described in

Section II.A, above.  And even if CCE were right that the Final Election was not sufficiently specific, Apple addressed this issue quickly and clearly by identifying the precise invalidity defenses in CCE's own language.  Indeed, CCE had this information weeks ago, on May 3.  CCE has no genuine basis to ask to strike any of Dr. Acampora's opinions as to these defenses.

Nor should Dr. Acampora's other opinions about prior art be stricken.  As CCE acknowledged in meeting and conferring, Dr. Acampora is free to "present testimony about references not listed in the table above [i.e., about unelected references] to demonstrate the state of the art, background of the alleged invention, or contemporaneous invention."  Exh. 6 (Draft stipulation attached to May 13 E. Nelson email) at ¶ 5.  Apart from specific conclusions about legal issues, such as anticipation and obviousness, all of Dr. Acampora's analysis of prior art disclosures describes the state of the art at the time the application for the '820 patent was filed. Some of that same analysis is germane to contemporaneous invention, which is a secondary factor of obviousness that supports (but does not combine with or replace) Apple's nine elected prior art invalidity defenses.  *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Even if they are not prior art, "[i]ndependently made, simultaneous inventions, made within a comparatively short space of time, are persuasive evidence that the claimed apparatus was the product only of ordinary mechanical or engineering skill.") (quotations omitted).  And Dr. Acampora's analysis of the content and significance of the prior art disclosures discussed in his report may be used in rebutting CCE's damages report.  For example, Apple's rebuttal experts may rely on Dr. Acampora's opinions about unelected references to evaluate the existence of non-infringing alternatives to the asserted claims of the '820 patent and the value of the asserted claims in light of those alternatives.  The existence of such non-infringing alternatives is a factor that may be considered in calculating damages.  *Apple*

*Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315, 1325-26 (Fed. Cir. 2014); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996).  In short, the material that CCE seeks to strike is relevant to issues separate and apart from assertions of anticipation and obviousness.

Moreover, should the Court bar Dr. Acampora from testifying that those skilled in the art knew of the content of unelected references, that can be achieved without excluding testimony that is relevant to these other issues.  For example, Dr. Acampora could testify about the content of unelected references when discussing state of the art (to which CCE does not, and cannot reasonably, object), but refrain from testifying that a person having ordinary skill in the art would have known about them.  CCE's proposed relief is extreme, unnecessary, and highly prejudicial to Apple.

## VI.
## CONCLUSION

CCE's Motion is not justified by the facts and seeks to limit Apple's evidence in ways that are unsupported by the Model Order, unfairly prejudice Apple, and invite error.  For the reasons discussed above, the Court should deny this Motion.

DATED:  May 23, 2016

/s/ *Eric H. Findlay*
Douglas E. Lumish
Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025-1008
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
doug.lumish@lw.com
jeff.homrig@lw.com

Joseph H. Lee
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

joseph.lee@lw.com

Cassius K. Sims
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY  10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
cassius.sims@lw.com

Michael J. Gerardi
LATHAM & WATKINS LLP
555 11th St. NW, Suite 1000
Washington, DC 22201
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
michael.gerardi@lw.com

Eric H. Findlay (Bar No. 00789886)
FINDLAY CRAFT PC
102 N. College Avenue, Suite 900
Tyler, TX  75702
Telephone:  (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com

**ATTORNEYS FOR DEFENDANT APPLE INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document has been forwarded, via

electronic mail upon Plaintiff's counsel of record on May 23, 2016.

/s/ *Eric H. Findlay*
Eric H. Findlay

15